LAW OFFICE OF
**PETER A. ROMERO**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

February 2, 2024

**VIA ECF**
Hon. Steven L. Tiscione
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 910
Central Islip, New York 11722

      Re:   *Hermes Velasquez v. Letterman Corp. d/b/a Jerry and the Mermaid, et al.*
             Docket No.: 2:23-CV-00813-MKB-ST

Dear Judge Tiscione:

      This firm represents the Plaintiffs, Hermes Velasquez and Julio Velasquez, in the above-referenced matter brought against Defendants Letterman Corp. d/b/a Jerry and the Mermaid, Jerome Dicecco, Jr., and Jerome Dicecco, Sr., for alleged violations of the Fair Labor Standards Act and New York Labor Law.  Specifically, Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), as well as failure to pay spread of hours pay, failure to issue accurate wage statements pursuant to NYLL § 195(3), and failure to provide a wage notice at his time of hire pursuant to NYLL § 195(1). D.E. 1.  Through early mediation, the parties have reached a resolution of this action.  Accordingly, Plaintiffs now submit this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement. The parties' proposed Executed Settlement Agreement (the "Agreement") is attached as Exhibit A.

**Procedural History**

      On February 2, 2023, Plaintiffs filed their Complaint in this action. D.E. 1.  Defendants filed their Answer to the Complaint on May 5, 2023. D.E. 11.  Subsequent to the Initial Conference, the parties were referred to mediation on June 22, 2023.  The parties then held an EDNY mediation with mediator Giulio Zanolla on December 4, 2023, which resulted in a settlement.  Thereafter, the parties drafted their formal settlement agreement, which has been fully executed, and is attached hereto as Exhibit A.

      The settlement agreement between the Plaintiffs and the Defendants provides for payment of a gross sum of $40,000.00, inclusive of attorneys' fees and costs.  Pursuant to the Agreement, Plaintiffs will each receive a total sum of $12,903.72, and Plaintiffs' counsel will receive a total sum of $14,192.60, consisting of $12,903.72 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $1,288.80 for litigation costs.

LAW OFFICE OF PETER A. ROMERO PLLC  •  LABOR AND EMPLOYMENT LITIGATION
490 Wheeler Road, Suite 250, Hauppauge, New York 11788  •  (631) 257-5588  •  overtimelawny.com

## **The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendants – a corporation and its two owners and operators – operate a seafood restaurant located in Riverhead, New York. Plaintiffs assert that Defendants employed them as food preparers, cooks, and dishwashers from 2014 through October 2022 for Plaintiff Hermes, and from 2016 through September 2021 for Plaintiff Julio. Throughout their respective employments, Plaintiffs allege that they commonly worked more than forty hours during many workweeks. For this work, Plaintiffs allege that Defendants paid them part check and part cash, none of which compensated them at their proper overtime rates. As a result, despite frequently working in excess of forty hours in a workweek, Plaintiffs contend that Defendants failed to pay them their statutorily mandated overtime rates of pay of one and one-half times their applicable regular rates of pay for the hours they worked in excess of forty hours each workweek, in violation of the FLSA and NYLL, and failed to provide them with accurate wage notices at the time of their respective hires, or accurate wage statements on each and every pay day as substantial portions of their pay was in cash.

Critically, the parties have several key disputes that impact liability and damages. Defendants contend that Plaintiffs were paid correctly for their hours worked. Defendants strenuously argue that Plaintiffs were paid properly, and provided employment records that purported to show the hours worked by Plaintiffs and their hourly rates. Plaintiffs vigorously reject the veracity of these records, and maintain that they were not paid properly for their overtime hours worked. Defendants also contest the number of hours worked by Plaintiffs during their workweeks, asserting that Plaintiffs worked fewer hours during their workweeks than alleged. Each of these disputes will turn primarily on the credibility of the records that exist, and the parties, and the resolution of these disputes would have a significant outcome on liability and Plaintiffs' damages at trial. Additionally, Defendants contend that Plaintiffs are not entitled to liquidated damages, whereas Plaintiffs assert that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Additionally, Defendants assert that they have limited financial resources and cannot afford a larger settlement or judgment. Because of this, Plaintiffs face a significant risk that they could end up collecting little or even no monetary recovery, even if successful at trial.

Plaintiffs calculated their damages in order to assess their best possible recovery in this litigation. Making all reasonable assumptions in their favor, according to Plaintiffs' calculations, Plaintiff Hermes's best potential recovery under the FLSA at trial amounts to $17,759.78 for unpaid FLSA wages and $17,759.78 for FLSA liquidated damages, and Plaintiff Julio's Damages best potential recovery under the FLSA at trial amounts $4,541.72 for unpaid FLSA wages and $4,541.72 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, and depositions of Plaintiffs, Defendants, and likely several non-party witnesses. This settlement also avoids potential partial motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiffs, even if they are successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn almost entirely upon the credibility of the parties and determining whether Plaintiffs' recollection of their hours worked will prevail or whether Defendants' records are accurate and must be followed. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiffs were successful on their FLSA wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiffs' available FLSA damages by half. If Defendants could establish that the alleged violations were not willful, Plaintiffs' FLSA claims would be subject to a two-year statute of limitations, which would further reduce their unpaid FLSA damages. Moreover, in light of Defendants' defenses, there is a risk that Plaintiffs could ultimately receive little or nothing at all under the FLSA. Thus, by settling at this stage, Plaintiffs ensure that they will receive a recovery in this matter. Additionally, even if Plaintiffs were successful at trial, there is a substantial risk that Plaintiffs would be able to collect only a small portion of the judgment or possibly be unable to collect any recovery under the judgment due to Defendants' limited financial resources.

Accordingly, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the significant possibility that they could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiffs will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Agreement is limited to wage-related claims. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to

wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to the instant action.

Additionally, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). The Agreement also does not contain a non-disclosure or non-disparagement provision. As a result, there are no terms in the agreement that would offend the dictates of Cheeks v. Freeport Pancake House, Inc.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator at a formal mediation session. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $7,155.99, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013)

(collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiffs' counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Romero Law Group PLLC is a boutique employment litigation law firm, located at 490 Wheeler Road, Suite 277, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal courts.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004. Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009

until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle. That firm employs Matthew J. Farnworth, Esq., Associate, David D. Barnhorn, Esq., Senior Associate, a paralegal, and an administrative assistant, as well as other support staff as needed. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters. Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Mr. Romero has also been selected as a Super Lawyer in "Employment Litigation" for the years 2019, 2020, 2021 and 2022.

The undersigned, Matthew J. Farnworth, Esq., graduated from Pace University School of Law in 2016. I was admitted to practice in New York State, as well as the New York Eastern and Southern District Courts in 2018, in New Jersey State Court in 2019, and the Federal District of New Jersey in 2020. I have been employed as an associate for this Firm since August 2021. Prior to joining this firm, I worked as a senior associate and associate at two prominent employment law litigation firms from May 2018 until August 2021. Throughout my legal career, beginning in May 2018 through the present, I have focused my practice almost exclusively on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies, as well as handling active litigation in both state and federal courts.

Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $250.00 per hour for the undersigned, Matthew J. Farnworth, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba.[1] "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190

---

[1] While this firm, and Mr. Farnworth's previous firm primarily represent clients on a contingency fee basis, Mr. Farnworth and Mr. Romero have represented some clients on an hourly basis. In those retainers, depending on each client's respective financial abilities, clients have agreed to compensate Mr. Farnworth for representation at the rate of $250.00 to $300.00 per hour and have agreed to compensate Mr. Romero for representation at rates of $300.00 to $500.00 per hour. Accordingly, the firm's requested rates are well within the normal rates awarded in contingency fee matters and the rates actually received by paying clients.

(2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $250.00 per hour for the undersigned, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable. Alcantara v. Alon B. Inc., No. 18-CV-5516 (JMA) (AYS), 2021 WL 4463539, at *1 (E.D.N.Y. Sept. 29, 2021) (approving "rates of $400.00 per hour for attorney Peter Romero, Esq. and $100 per hour for paralegal Angelica Villalba" as reasonable "and within the range of similarly experienced attorneys who practice wage and hour cases in the Eastern District of New York."); Solnin v. Sun Life & Health Ins. Co., 2018 WL 4853046, at *3 (E.D.N.Y. Sept. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275.00 and noting proper rate for senior associates is up to $325.00 per hour and for experienced partners is between $300.00-$450.00 per hour in this district); Allied 100, LLC v. Chadha, 2021 WL 7184241, at *11 (E.D.N.Y. Jul. 26, 2021) (finding a rate of $325.00 reasonable for an associate who graduated law school in 2018); Cap. One, N.A. v. Auto Gallery Motors, LLC, 2020 WL 423422, at *4 (E.D.N.Y. Jan. 27, 2020) (finding a rate of $275.00 per hour reasonable for associates with more than five years of experience, and a rate of $250.00 per hour reasonable for an associate with less than five years of experience); National Environmental Safety Company, Inc. v. Katz, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (finding a rate of $300.00 reasonable for an associate who failed to provide any evidence of his competence beyond his title); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. CEI Contractors Inc., 2022 WL 3225680, at * 5 (S.D.N.Y. August 10, 2022) (awarding an associate who graduated from law school the same year as the undersigned associate, practicing within the associate's particular legal field fees of $250.00 per hour); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. Land Cruising Properties, Inc., 2022 WL 1125623 at *7 (S.D.N.Y. April 15, 2022) (same); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Innovation Designs Inc., 2021 WL 4869951, at *7 (S.D.N.Y. Oct. 18, 2021) (same); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Here, Plaintiffs' counsel investigated the Plaintiffs' claims, conducted a detailed inquiry regarding Plaintiffs' job duties, their hours worked and compensation received, and Defendants' compensation policies, engaged in relevant pre-mediation discovery, created an assessment of Plaintiffs' damages, engaged in mediation with Plaintiffs and Defendants, and subsequently negotiated a settlement agreement. Due to the contingent nature of the case, Plaintiffs' counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiffs' counsel was zealous in the pursuit of Plaintiffs' litigation objectives and secured a

favorable result on the Plaintiffs' behalf. The settlement will be made available to the Plaintiffs without the uncertainty and delay of trial.

As a result, the Firm expended a total of 37.65 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit B. Thus, Plaintiffs' attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $8,475.00. Here, although Plaintiff's lodestar is less than the amount of fees requested under the standard contingency fee method, Plaintiff's counsel's requested fees are well within the range approved by courts when applying a moderate lodestar multiplier.

Where, as here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. See In re Platinum & Palladium Commodities Litig., 2015 WL 4560206 (S.D.N.Y. July 7, 2015). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases they have awarded multipliers that are even higher. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481-482 (S.D.N.Y. 2013) (collecting cases); Zeltser v. Merrill Lynch & Co., 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (collecting cases); see also Riveras v. Bilboa Rest. Corp., Docket No. 17-cv-04430 (S.D.N.Y. Dec. 14, 2018) (See DE 74) (Memorandum and Order approving a lodestar multiplier of 6.7). Plaintiffs' counsel's representation in this matter is subject to a contingency retainer, creating an inherent risk that this firm could receive no compensation for its efforts in this action if the lawsuit were not successful or if Plaintiffs were unable to collect a judgment. Given the challenge that Plaintiffs must overcome the records maintained by Defendants, as well as the unpredictable nature of convincing a trier of fact of Plaintiffs' hours worked with the absence of any documentary records to support their recollections, Plaintiffs' risk of not obtaining any recovery was serious and exceeds the risks associated with a typical settlement. Plaintiffs also face the unavoidable risk of non-payment by certain Defendants in this settlement given the modest assets of both the corporate and individual Defendants. Moreover, Plaintiffs' counsel provided quality representation by zealously pursuing Plaintiffs' litigation objectives and obtaining a favorable settlement that obtains Plaintiffs their FLSA wages. Here, the multiplier requested is approximately 1.53, which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. See Zeltser, 2014 WL 4816134, at *10 (citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)) ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly"); Beckman, 293 F.R.D. at 482 (noting applying multiplier is proper as achieving an early settlement "should not result in penalizing plaintiffs' counsel"); see also Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020) (quoting Sand v. Greenberg, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)) ("Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'"); Zeltser, 2014 WL 4816134, at *8 (quoting

Sand, 2010 WL 69359, at *3; and citing Reyes v. Altamarea Grp., LLC, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" and "The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights."). While the Court should be careful not to penalize a litigant's counsel in any matter for reaching an early settlement, this is especially prudent where, as here, the parties have reached a reasonable resolution that is favorable to the Plaintiffs and that was achieved through an early referral to the EDNY's mediation program.

Additionally, the Court should review the public policy considerations concerning the manner in which attorneys' fees are assessed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing this litigation would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is reached, other attorneys who do wage-and-hour litigation very well might. Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy. Thus, the amount of attorneys' fees sought – $12,903.72 – is a reasonable fee in this action.

Lastly, Plaintiffs' counsel seeks reimbursement for $1,288.80 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint, $161.80 for the costs of service, and $725.00 for the mediation costs. Proof of payment of same is annexed hereto as Exhibit C, and on the Docket at D.E. 1.

Accordingly, Plaintiffs' counsels' requests for attorneys' fees in the amount of $12,903.72 and expenses in the amount of $1,288.80 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. We thank the Court for its consideration of these requests.

Respectfully submitted,

  /s/ Matthew J. Farnworth, Esq.  
MATTHEW J. FARNWORTH, ESQ.

C:   All Counsel of Record *via* ECF